***********
The Full Commission has reviewed the Deputy Commissioner's Opinion and Award based on the record of the proceedings before the Deputy Commissioner. The appealing party has shown good grounds to reconsider the evidence, and having reviewed the competent evidence of record, the Full Commission hereby modifies the Opinion and Award of the Deputy Commissioner and awards benefits as stated below.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement at the deputy commissioner hearing as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, which has jurisdiction over the parties and the subject matter of this claim.
2. On 7 June 1996, an employment relationship existed between plaintiff-employee and defendant-employer, and Federated Rural Electric Insurance Company provided workers' compensation for defendant-employer.
3. On 7 June 1996, plaintiff's average weekly wage was $852.17, yielding the maximum compensation rate for 1996 of $492.00.
4. On 7 June 1996, plaintiff sustained a compensable injury, to his lower back, by accident arising out of and in the course of his employment with defendant-employer.
5. Defendants accepted liability for plaintiff's injury through an Industrial Commission Form 21 Agreement for Compensation, which was approved by the Commission on 28 August 1996.
6. Pursuant to the Industrial Commission Form 21, and the subsequently filed Industrial Commission Form 60 and Form 62 Agreements, plaintiff received temporary total disability compensation at the rate of $492.00 for all of the periods he was unable to work or earn any wages as a result of his 7 June 1996 injury by accident.
7. Plaintiff's last day of employment with defendant-employer was on 12 September 1997.
8. On 1 December 1997, plaintiff became employed by Bowman Hardware at an average weekly wage which was less than his average weekly wage on 7 June 1996.
9. On or about 12 June 2000, plaintiff became employed by Cable Location Services at an average weekly wage which was less than his average weekly wage on 7 June 1996.
10. Pursuant to the Industrial Commission Forms 62, plaintiff has been receiving temporary partial disability compensation since 1 December 1997.
11. On 11 April 2000, defendants filed an Industrial Commission Form 24 Application to Terminate Benefits. By Order filed 22 May 2000, former Special Deputy Commissioner Gina Cammarano denied the Form 24 application.
12. On 7 June 2000, defendants filed an Industrial Commission Form 33 Request For Hearing, appealing the Order of former Special Deputy Commissioner Cammarano. On 15 June 2000, plaintiff filed an Industrial Commission Form 33R in response to defendants' hearing request.
13. The parties agreed to the admission into evidence of all Industrial Commission forms in the file.
14. At, and subsequent to the deputy commissioner hearing, the parties submitted the following:
 a. A Notebook of Medical and other Relevant Records, which was admitted into the record and marked as Stipulated Exhibit (2);
 b. Payment Records, which were admitted into the record and marked collectively as Stipulated Exhibit (3);
 c. Notarized Payroll Records from Cable Locating Services, which were admitted into the record and marked collectively as Stipulated Exhibit (4);
 d. Notarized Payroll Records from VMAC, Inc, which were admitted into the record and marked collectively as Stipulated Exhibit (5);
 e. Notarized Payroll Records from Bowman Hardware, which were admitted into the record and marked as Stipulated Exhibit (6), and;
 f. An Industrial Commission Form 22 Wage Chart, which is admitted into the record and marked as Stipulated Exhibit (7).
15. The issues for determination before the deputy commissioner were: a) whether plaintiff is entitled to any additional disability compensation subsequent to 30 August 1999; b) and if so, to what compensation is he entitled; c) whether plaintiff has been overpaid temporary partial disability compensation since 1 December 1997, and if so, the amount of the overpayment; and d) whether plaintiff is entitled to ongoing medical care and treatment for the injury he sustained on 7 June 1996.
 ***********
Based upon the competent evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. On the date of the deputy commissioner hearing, plaintiff was 47 years of age, with his date of birth being 31 August 1954. Plaintiff is a high school graduate and has received some additional technical training.
2. As of 7 June 1996, plaintiff had been employed by defendant-employer for 23 years. Plaintiff has worked for defendant-employer as a crew leader and as a lineman. On 7 June 1996, plaintiff was working for defendant-employer as an electrical line foreman, a position which he had held for approximately 6 years.
3. Plaintiff's work as an electrical line foreman involved installing and maintaining electrical overhead and underground lines, and was performed in rugged terrain of mountain regions of North Carolina and East Tennessee. Plaintiff's job as a line foreman required him to climb poles and trees and to occasionally clear underbrush and trees from defendant-employer's right of way. Plaintiff's duties for defendant-employer also required bending, twisting, and turning, as well as pushing, pulling and lifting heavy amounts.
4. On 7 June 1996, plaintiff sustained an injury by accident while working for defendant-employer. The compensability of this incident was admitted by defendants through an Industrial Commission Form 21 Agreement for Compensation, which was approved on 28 August 1996. The average weekly wage listed on the Form 21 was $852.17. The Form 21 also indicates that this amount was subject to verification. Prior to and at the hearing, defendants were willing to stipulate to that average weekly wage. However, in the Pretrial Agreement and at the hearing, plaintiff raised as an issue his correct average weekly wage on the date of his injury, and requested that defendants prepare a an Industrial Commission Form 22 wage chart, which has now been submitted and marked as Stipulated Exhibit 7. Based upon the stipulated Form 22, plaintiff's average weekly wage as listed on the Form 21 was incorrect, with plaintiff's correct average weekly wage on the date of injury being $841.12, which yields the maximum compensation rate for 1996 of $492.00. Accordingly, the amounts of temporary total disability compensation paid to plaintiff were correct, but the amounts of temporary partial disability benefits paid have been based on an erroneous average weekly wage.
5. Pursuant to the approved Form 21, plaintiff was paid temporary total disability compensation at the rate of $492.00 per week for the period of 17 June 1996 through 3 September 1996, when he returned to work.
6. Following his injury by accident, plaintiff was initially treated by Dr. Donald Mulliss, an orthopedic surgeon, who diagnosed a herniated disc at L4-5 level on the right. On 16 January 1997, following a period of conservative treatment, plaintiff underwent a laminectomy and discectomy procedures performed by Dr. Mullis. Payments of temporary total disability compensation resumed on 16 January 1997, and continued through 25 March 1997.
7. On 26 March 1997, plaintiff returned to light duty work with defendant-employer. Plaintiff continued working in that capacity until 23 June 1997, at which time his hours decreased. During the subsequent period in which plaintiff received diminished earnings, he was paid temporary partial disability benefits by defendants at the rate of $246.00 per week.
8. On 23 July 1997, Dr. Mullis opined that plaintiff had reached maximum medical improvement, and assigned a fifteen percent (15%) permanent partial disability rating to his back. At that time, Dr. Mullis also assigned plaintiff permanent work restrictions, which included restrictions of lifting no more than thirty (30) pounds occasionally, fifteen (15) pounds frequently, and (5) pounds constantly. Plaintiff was also restricted regarding bending, climbing, and squatting. In Dr. Mullis' opinion, plaintiff was able to perform light to medium duty work. As the result of the restrictions imposed by Dr. Mullis, plaintiff was unable to return to his former position as an electrical line foreman.
9. On 12 September 1997, plaintiff's employment with defendant-employer ended when he was terminated. Credible evidence was presented which establishes that plaintiff's termination was related to his restrictions from the 7 June 1996 injury by accident. Subsequently, payments of temporary total disability compensation resumed through an Industrial Commission Form 60, dated 26 September 1997.
10. In March 1998, plaintiff began to experience additional low back, and right leg problems for which he was examined by Dr. Ralph C. Loomis. Dr. Loomis ordered a lumbar myelogram, which revealed narrowing disk space at the L4-5 and L5-S1 levels, and a CT scan, which revealed a disk protrusion at the L5-S1 level and a bulging disk at the L3-4 level. On 10 June 1998, plaintiff underwent surgery performed by Dr. Loomis to treat the herniated disk at the L5-S1 level. Despite references in his notes of continued pain experienced by plaintiff following his 1996 surgery, Dr. Loomis was unequivocal in his opinion that the back condition for which he treated plaintiff was a new condition and was not caused by plaintiff's 6 June 1996 injury by accident.
11. Based upon the credible medical evidence of record, the condition for which plaintiff underwent surgery by Dr. Loomis in June 1998 was not caused, aggravated or accelerated by his 7 June 1996 injury by accident.
12. Beginning in February 1999, plaintiff also experienced additional problems with his back for which he sought treatment with Dr. Mulliss. At that time, he was continuing to have constant low back pain with pain going down into his right leg, and numbness and tingling in his right foot. The cause of plaintiff's problems and complaints at that time was degenerative disc disease at multiple levels of his lumbar spine, and scar tissue around the S1 nerve root at L5-S1. Dr. Mullis recommended to plaintiff that he see Dr. James Hoski to consider a lumbar fusion. Dr. Hoski first examined plaintiff on 11 February 1999, and eventually determined that plaintiff was not a candidate for another surgical procedure. Based upon the credible medical evidence of record, neither the degenerative disc disease nor the scar tissue at the S1 nerve root was caused, aggravated or accelerated by plaintiff's 7 June 1996 injury by accident.
13. On 30 August 1999, plaintiff underwent functional capacity evaluation with therapist Ms. Nancy Leigh Douglas. At the evaluation, plaintiff reported that he was much better since his second surgery and was hoping to return to his previous employment with defendant-employer. Additionally, records from the evaluation indicate that Ms. Douglas was informed that plaintiff had returned to what were essentially his normal activities at home. The results of the functional capacity evaluation indicate that plaintiff was capable of work at the heavy physical demand level.
14. In a 23 February 2000 correspondence, and based upon the results of the functional capacity evaluation, Dr. Loomis opined that plaintiff was capable of returning to his prior job as an electrical line foreman, the position that plaintiff previously held with defendant-employer. Although Dr. Loomis was not treating plaintiff at that time, and did not examine plaintiff prior to giving his opinion, his opinion was based on the objective results of the FCE. Dr. Loomis' opinion is found to be competent and is afforded great weight. Furthermore, plaintiff was familiar with the requirements of his former job with defendant-employer and specifically asked Dr. Loomis for a favorable report allowing him to return to work with defendant-employer. It is obvious that plaintiff wanted to return to work for defendant-employer. That, however, does not affect the weight that should be given to an otherwise valid FCE showing that plaintiff could work in the heavy demand level. There is no showing that plaintiff could not work at that level. Plaintiff's normal off-work activities at that time included running 10 to 30 minutes three times a week, building barbed wire fences, riding a lawn mower, rounding up cattle, and renovating an old homeplace.
15. After the date of his termination on 17 September 1997, plaintiff found work with other employers. On 1 December 1997, plaintiff was employed by Bowman Hardware, earning only $115.00 per week. Pursuant to an Industrial Commission Form 62, dated 21 April 1998, plaintiff was then paid temporary partial disability benefits commencing on 1 December 1997 at the rate of $492.00 per week. Based upon W-2 forms, which were received into evidence and marked as Stipulated Exhibit (6), plaintiff's average weekly wage while working for Bowman Hardware was $108.81 in 1998, $165.62 in 1999, and $150.00 in 2000. This information was not provided to defendants until months following the date upon which plaintiff last worked for Bowman Hardware.
16. On 12 June 2000 plaintiff was employed by Cable Locating Services, earning $10.00 per hour and working forty (40) hours per week. Pursuant to an Industrial Commission Form 62 dated 15 June 2000, plaintiff was paid temporary partial disability benefits at the weekly rate of $301.46. Plaintiff's employment with this employer is also reflected on an Industrial Commission Form 28 return-to-work report dated 15 June 2000.
17. Plaintiff worked with Cable Locating Services from 12 June 2000 to 17 August 2000. On 21 August 2000, plaintiff became employed with VMAC, where he continued to work as of the date of the hearing. Plaintiff's job duties with both of these employers involve locating and marking underground cable. Each of these jobs also involve driving between one-hundred and fifty and two-hundred miles per day (150 to 200). Plaintiff used a small car to perform his job with Cable Locating Services, and uses a small pickup truck to do so for VMAC.
18. In May 2001, plaintiff was again examined by Dr. Mulliss with complaints of low back and left leg pain. This was plaintiff's first visit to Dr. Mullis since February 3, 1999. Plaintiff informed Dr. Mullis that, following the extensive driving required by his job with VMAC, he experienced significant back pain.
19. Based on Dr. Mullis' testimony, the Full Commission finds that in 2001, plaintiff continued to have some low back pain resulting from his June 7, 1996, injury as well as subsequent two surgeries, but it was the extensive driving required for the cable locator jobs that caused plaintiff's significant symptoms at that time. Dr. Mullis recommended that plaintiff seek other employment because the problems caused by the extensive driving aggravated his pre-existing problems.
20. Based on the greater weight of the competent evidence, including the objective results of the FCE, plaintiff was capable of returning to his prior employment with defendant-employer, and therefore, was not disabled upon his release to work by Dr. Loomis on 23 February 2000. The results of the FCE establish that plaintiff was able to return to his former employment and earn his pre-injury wage.
 ***********
Based on the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. As a result of his 7 June 1996 injury by accident, plaintiff was entitled to temporary total disability benefits at the rate of $492.00 per week for the periods of 17 June 1996 through 3 September 1996, and from 12 September 1997 through 1 December 1997. G.S. § 97-29. These benefits have been paid, and plaintiff is not entitled to any additional temporary total disability benefits. G.S. § 97-29.
2. As a result of his 7 June 1996 injury by accident, plaintiff is entitled to temporary partial disability benefits at the rate of two thirds the difference between his average weekly wage at the time of her injury of $841.12, and the average weekly wage he earned thereafter for the periods of 23 June 1997 to 12 September 1997, and from 1 December 1997 through 23 February 2000. G.S. § 97-30.
3. Plaintiff's period of partial disability ended on 23 February 2000. G.S. § 97-30. Compensation for partial incapacity is based on the loss of wage-earning capacity, not the amount that the employee actually earns. G.S. § 97-30; Gupton v. Builders Transport, 320 N.C. 38,357 S.E.2d 674 (1987); Hill v. Dubose, 234 N.C. 446, 67 S.E.2d 371
(1951). Although plaintiff earned less than his pre-injury wage after 23 February 2000, the greater weight of the competent evidence is that he was capable of performing his pre-injury job on or after 23 February 2000, and thereby does not possess an inability due to his injury to earn his pre-injury wage.
4. Plaintiff is entitled to elect between Section 97-30 and 97-31
benefits and is presumed to elect the benefits that award the greater recovery. Gupton v. Builders Transport, 320 N.C. 38, 357 S.E.2d 674
(1987). The payment of § 97-30 partial disability benefits after plaintiff reached maximum medical improvement is greater than the payment of benefits for the 15% impairment rating under § 97-31; therefore, plaintiff is entitled to the benefits expressed in paragraph 2, above.
5. Defendants are entitled to a credit against future indemnity benefits, if any, as a result of the overpayment of temporary partial disability benefits because the statutory calculation was erroneously based upon an average weekly wage at the time of plaintiff's injury of $852.17, and because of payments made after partial disability ended. G.S. § 97-42
6. Plaintiff is entitled to have defendants pay for all reasonable medical expenses related to his 7 June 1996 injury. G.S. §§ 97-25;97-25.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff temporary partial disability benefits at the rate of two thirds of the difference between his average weekly wage at the time of her injury of $841.12, and the average weekly wages he earned thereafter for the periods of 23 June 1997 to 12 September 1997, and from 1 December 1997 through 23 February 2000. This compensation is subject to the credit in defendants' favor and the attorney's fee approved herein.
2. Defendants are entitled to a credit against future indemnity compensation, if any, as the result of the overpayment of temporary partial disability benefits paid to date.
3. Defendants shall pay for all related medical expenses related to plaintiff's 7 June 1996 injury by accident.
4. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded herein is approved for counsel for plaintiff. This fee shall be deducted from the amounts due plaintiff and paid directly to counsel for plaintiff.
5. Defendants shall pay the costs.
 S/_______________ RENEE C. RIGGSBEE COMMISSIONER
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
 S/_____________ THOMAS J. BOLCH COMMISSIONER